May it please the Court, Counsel, my name is Jeanette Stoll and I'm here on behalf of the appellant Dan Monohon. On May 20th of 2016, Dan Monohon's wife sat in the gallery of the courtroom, two months pregnant with her and Dan's second child, and listened as the jury returned a unanimous verdict in favor of her husband. That jury had concluded that Dan was fired illegally from his job as a track inspector at the BNSF and awarded him $500,000 in damages. Dan and Kim's daughter will turn three in January. It's been over three and a half years since that jury verdict, and I stand before you today with this case still unresolved because that jury verdict was eventually taken away by the district court. Because of that, Mr. Monohon has not been reinstated to his position, nor has he received the benefit of the $500,000 verdict, nor has he received the benefit of the extra $500,000 plus that he received later by the district court in attorney's fees and front pay. Because of all of that, he's still driving a truck over the road, away from his family all week, and has barely gotten to see his daughter be raised, and he should be back at work at the BNSF. While you can't erase the delay in justice that occurred at the district court level in this case, I urge you to reinstate the jury's verdict and to reinstate Mr. Monohon to his position as a track inspector. In this case, the district court erred in granting judgment as a matter of law. As this court is well aware, the standard for taking away a jury's verdict is incredibly high. The evidence has to be viewed in the light most favorable to the non-moving party, us. I'm giving the non-moving party the benefit of all of the reasonable inferences and assuming that the jury resolved all conflicts and evidence in favor of us. Jury cases are supposed to be decided by juries, not by judges, no matter how strongly they may feel about the particular case. The district court's sole reason for taking away the jury's verdict in this case was its bout face on the issue of whether a good-faith report of a hazardous safety condition under section 20109 includes an objective component in addition to a subjective component. The district court had held throughout the litigation that the term good-faith requires only a subjectively honestly held belief. When the jury found that Mr. Monohon had met this definition, contrary to the district judge's own personal beliefs, the district judge solved that problem by completely changing the rules that we had all been operating under in the litigation. The court's ruling not only interferes with the sanctity of the jury's decision-making role, but is legally wrong. Under section 20109 of the Federal Railway Safety Act, it prohibits a railroad from terminating an employee for, quote, reporting in good faith a hazardous safety or security condition. The term good faith is consistently used in employment discrimination and whistleblower cases to mean simply subjective honesty. The terms good faith and reasonable are two very different standards. Congress understands those terms, uses them differently in different contexts in order to apply different standards to different things. Looking at this very statute, I know you're in BA, B1A. B1A, yes. Sorry, I didn't see the one over there. But we're in B1A. But if you look at B2A, do you think good faith and reasonable there mean the same thing or different, or how do you fit those two together? Well, if you look at kind of the long litany of different protected activities under section 20109, the term reasonable is thrown in, the term good faith is thrown in, and sometimes when you're talking about B2A. But the question here is about B2A. When they're together. Right, and when you have B2A, you have good faith and reasonable together. So here we're talking about a refusal to work, which is a very different situation than ours here. But the refusal has to be in good faith with no reasonable alternative to solving that problem, and a reasonable individual in that circumstance would feel that they were in imminent danger. So when you invoke that reasonable standard, then clearly we have an objective standard. That standard, that word, is not used at all in the hazardous safety condition section of 20109. Let me ask you this about B1A. Suppose a person reports and has an honest belief, but what he's reporting with his honest belief is not a hazardous safety condition. And I think all of it kind of circles each other. The BNSF has made the argument that it has to be an actual hazardous safety condition as part of their argument. I mean, I'm not adding the word actual. I'm just saying what if it's not a hazardous safety condition? And I do believe that it does have to be a good faith belief that it is a hazardous safety condition. That is my reading of Section B1A. Right, I'm asking you why that's a better reading than saying that it has to be a hazardous safety condition. Because it doesn't say good faith belief. It says reporting in good faith. Reporting in good faith as in the issue of motive as opposed to good faith applying to the actual hazardous safety condition. Is that the point? I'm wondering which is the better way to read it and why. Well, and even if you do, and let me go that direction, that if you do read it as having to be a hazardous safety condition, we have a hazardous safety condition here. I mean, I'm happy to hear you out on that, but do you have any further to say on whether we should read it that way? I'm not saying that I've decided we should read it that way. I'm working through it. Sure. Do you have any further to say on why you think it's better to read it the way you suggest? Or have you covered that? Well, there is no case law that actually interprets that particular issue. So what you would hear from me is just my arguments as the fact that we have in good faith that is used in this statute, that that should be used to determine the – And I think one way to kind of get here is when we have all of the trying to gloss this with actual, tangible, non-hypothetical safety condition, that is contrary to Title VII law to the extent that we can or can't apply Title VII law, that when we have retaliation cases that focus on having to – that you engaged in protected activity, the courts have held that it doesn't have to be actual illegal activity, but only that the person reasonably believes that it was – Well, but that's a totally different text, and I'm not sure whether that's very illuminating. Did you want to address why you think there is sufficient evidence here to show a hazardous safety condition if the statute requires that? Certainly, Your Honor. The evidence presented at trial here does support the conclusion that there was a hazardous safety condition in this case. Various witnesses described some version of this scenario. That's what I was interested in. You talk about it on page 37. For some reason, I didn't bring the appendix with me. What were some of the examples that were presented to the jury? Well, some of the – A 19,000-ton truck coming around a curb, a train coming around a curb? Right. And so here, this is kind of an amalgamation of the different examples and testimony that were presented at trial, either based on actual instances that happened to people who testified or people that they heard of or their – because they were not able to leave the rail car because of the seatbelt. Right. So if you're a track inspector, high railing – Just don't tell a dozen. Give three examples of what were injuries occurred as a result of having to wear the seatbelt. The best example of actual full-blown injuries would be the offer of proof that was offered at trial, where the district court didn't actually let us get into that topic, which involved the road railer, which is a big piece of equipment, in its limits, comes around a corner and hits a stopped train that was where it shouldn't be. Those folks were trying to get unbuckled from their seatbelts, but because the brakes had been hit, everything had locked up and they couldn't get out. They hit, and we had folks who had serious injuries, rods through knees, everything blown up, had to have several surgeries and end up retiring. So that – But wasn't that a vehicle that was carrying a lot of weight behind it, and the injuries resulted from the weight coming from behind? Certainly that's part of it, and not every circumstance is going to be exactly the same. But the whole idea is that you have trains or other vehicles that end up being out of their limits, even when – Out of their limits, what does that mean? Out of its limits? Yes. Out of its – when you are a track inspector or any other train or other vehicle, you have the opportunity to – the dispatcher gives you space. You're here to do your job. You're this track inspector who gets on your high rail. You have been given a job to inspect track here, and you are within your limits where you are allowed to be where other trains are not supposed to be during that time. So being within your limits is a matter of being where you're supposed to be and where you're allowed to be and keeping others out of it to prevent these kinds of injuries. But there was ample – So you mean that if a train is out of its limits, it means it's beyond the range it's supposed to be in and in the range where the high railer is? Exactly. So you're in a situation – Do you have an example where that actually happened?  where he is on his high rail where he's supposed to be. There's an Amtrak coming the other direction, and because of the angle of things, he thinks it's on his track when it actually isn't, and he was about ready to bail out because he thought he was going to get hit and die. When you're on these tracks, the sight lines are not great. You have curves. You have vegetation. You have – you are in a high rail vehicle where you are attached to the tracks. You cannot steer off the tracks. It's metal on metal. There's oil. There may be precipitation. You slam on the brakes. You're not going to stop immediately, and you need to get out if there is a train coming at you or another vehicle. In which people were killed because of the conditions you just described? From the day before where there had been the safety briefing, yes, there had been some situations where there had been one serious injury and one death of track inspectors who had ended up hitting trains, yes. Now, what example is that of someone who was killed? The day before my client was found to be in trouble for not wearing his seat belt, there had been a safety briefing talking about two different serious accidents that had happened on the railroad where some track inspectors had hit trains and were either seriously injured or died. And so that had been the impetus of enforcing what had been a rule to wear seat belts that nobody had been following because all of the old heads, as they call them on the railroad, had always taken the position and had been kind of an unwritten rule that you don't wear a seat belt when you're high railing because you need to be able to bail out a vehicle if you're in this situation where you come across a train or another vehicle that's out of its limits and you need to get out of your truck quickly. Because you're talking about being in a five-ton pickup truck up against possibly a 19,000-ton coal train that could be coming at you at 50, 60 miles per hour. You don't have time to stop. So it was your position, your man was protected in reporting this. If the company thought, we've looked into this, we disagree with you. We think it is safe to wear seat belts. We're not buying it. Then if he refused to wear a seat belt, he could be discharged for insubordination? I believe that if he refused to wear his seat belt, he could be disciplined. I think discharge is going a little bit too far because there's a whole... Well, if he kept refusing, I mean, he could be disciplined. Right, exactly. He could be disciplined for that. And there was a same-outcome defense in this case as well? Is that presented to the jury? There was. There was a same-decision defense, and there was also causation arguments, none of which were relied on by the district court judge in overturning the verdict. But the jury had the option to say, we believe the railroad, they would have fired him anyway for insubordination, and they didn't accept that defense. Exactly. The jury held entirely in our favor, found that we met all of the elements of our claim, including that Mr. Monahan reported a hazardous safety condition and that he was fired for it and awarded him damages. Do you wish to save time for rebuttal? Certainly, Your Honor. You're not required to, but you're down to a minute and a half, so it's up to you how you want to use your time. Yeah, I would like to save the rest for rebuttal. Thank you. Very well. Mr. Neal, we'll hear from you. Good morning. May it please the Court. We're asking the Court to affirm Judge Jarvis' judgment as a matter of law ruling, and I've got a few different points that I want to make along the way as to different grounds on which you could uphold the ruling. I'm not going to start with the good faith point. Well, why don't you start with that, because he switched on the law, as I understand it. He did. And that's a major change from the jury trial to the post-trial ruling, and it seems, unless you have some reason why we don't have to get to that issue, it seems to be front and center. Okay. Well, I do, but let me start with that, because that's what you're interested in. Well, you may have alternative grounds that the judge didn't rely on? Yes. Well, why would we affirm on an alternative ground that the judge didn't? Why don't you address the good faith issue? Let me start with the good faith issue. Maybe you're uneasy about it, and so you don't want to talk about it first. No, no, it's just logically I was going through the logical analysis of it. I see. So let me start there. As far as changing the law, the judge is allowed to do that. We want district courts when they decide they've... No, I'm not saying there was anything improper about doing that if he was correct. Sure. But it's an unusual... What prompted this epiphany for the judge? I think that he indicated during the trial that he had not fully understood what the plaintiff's theory was when he had ruled on the summary judgment motion and said... That's different from what the law is, what his theory was. Well, I think when he heard their theory, he decided that is not supported by the law. No, he decided that I gave the wrong law to the jury and I'm going to give a different law now in the order. Well, you're right. I'm talking about during the trial. What prompted the change in the law? Have you been arguing in the post-trial motion that the jury instruction was wrong? We weren't focusing on the jury instruction. We were focusing on the legal requirement that has to be proven to show this claim, which is what the Supreme Court and this court... Well, that was in the jury instruction. Well, the jury instruction did focus on the subjective nature of good faith. And we pointed out that you also have to show the objective nature of the issue. Where do you get that from the text? Well, our first argument on that point, and it's a background for answering your question, so let me just briefly mention it and I'll come back to it in detail, is that we read the text to say you have to prove an actual hazardous safety condition. And I'll explain in more detail about that, and that's the questions you were asking a moment ago. That wasn't the basis for the ruling, but go ahead. No, no. And the judge is reading the word belief into this statute, as some other courts have as well, and Mr. Monahan does. If you're going to read the word belief into it, because it doesn't say good faith belief, it says in good faith. So if we're going to read the word belief into that provision, then it necessarily has to include a subjective and an objective standard, which is what other courts have said. The Ninth Circuit in the Rooker case said that about subsection A-2, and other courts that Rooker cites have said that about A-4. And it's consistent with the Supreme Court case we've cited, the Gateway Coal case, where the language said only good faith. The Supreme Court said you have to apply an objective standard, and you have to do that because the statute doesn't clearly indicate, just by saying good faith, that it's only subjective, and there are very negative consequences that would apply from using only a subjective standard, which is consistent with a long tradition in the law of not using a purely subjective standard unless the statute clearly says that. And I think if this statute said good faith belief, then perhaps we would have a harder road here. Well, what does in good faith mean if it doesn't mean based on a good faith belief? Belief is an added word there. What it means is the employee's motive in making the report. Is the employee doing it opportunistically? Is he raising it because he's been called out on a potential discipline issue, and this is a way to get around that discipline? So definitely it does go to the employee's state of mind, but it's not the employee's belief that a circumstance exists. It's the employee's motive in raising the issue. And one way we can tell that is to look at some of these provisions we were looking at earlier. B1C specifically refers to an employee's belief. The employee believes something about the equipment. So Congress easily could have put belief just two subsections above that in reporting a good faith hazardous safety or security condition. But even more than that, B1C is a refusal provision, so it only applies if the conditions in Section 2 are met. And that section, the first one, says the refusal is made in good faith. So that tells us that good faith, because for C you have to have both, you've got to satisfy both C and 2A, and then you've got beliefs and good faith used in both of those, which tells us good faith does not mean good faith belief. It means the motive in which the employee is raising the issue. You think it means a good faith report? Yes, in the sense of... What would be a bad faith report of a hazardous safety condition? If an employee is called out for discipline, for example, not wearing your seatbelt, and the response is, I'm going to make this report in order to get myself out of discipline. That's one way. Another could be perhaps an employee... Why would that be bad faith if it's a hazardous safety condition? You mean you're only allowed to report a hazardous safety condition when you're not seeking to avoid discipline? Well, if your motive for reporting it is not to notify the employer of a hazardous safety condition that needs to be dealt with, but is to get yourself out of discipline, I'd say no. That's not in good faith. Are you saying even if there's really a hazardous safety and security condition? Yes, I'm saying that. Are you sure that wasn't Congress's intent? I think... You're sure they wanted those to be reported, don't you think? Well, they very easily could have said, you know, this is not an employee who comes forward on this day and sees Mr. Anderson out there and says, you know, I want to tell you about this hazardous safety condition. He raises it reactively when he's brought up. Now, you know, we're not challenging. We're not saying that's this situation. I'm just giving you examples where you could have a bad motive in making a report. Another could be you're out to get some supervisor, so you want to report that supervisor for not doing something. And if you're going to read the hazardous safety condition provision as only dealing with the employee's belief, you know, there is an opportunity for potential abuse there in the sense of raising complaints purely out of a motive to do something else with the employer, either get yourself out of trouble or get somebody else in trouble. Did Mr. Moynihan's example of other problems supply the good faith reasonableness implicit in the jury's finding was the fact that he had demonstrated beyond peradventure of a doubt that hazardous conditions can result from mandatory seatbelts? Yeah. I think this, with respect to the jury finding, I think this is just a case that should not have gone to the jury to begin with. And the reason is that those examples, even if we're applying a good faith and a reasonable standard here, or even just a good faith, well, if we're applying a good faith and a reasonable standard or an actual hazardous safety condition standard, the examples he pointed to are examples of the potential for collisions to occur because someone is out of the limits. None of those examples save one had to do with a seatbelt issue. It's all speculative that if there's a situation for a collision, I'm worried that I won't be able to take off my seatbelt. The only one that had anything to do, if there was any evidence about a seatbelt being an issue, was that road-railer incident, which is a much larger car. It's like a semi on the tracks. And it's pulling a hundred-ton car behind it, and it's on a decline and runs into a train. There was evidence on that one that one of those individuals was trying to release the seatbelt and couldn't. That's the only one of all those examples that deals with the seatbelt. So we have to focus on... Wasn't there other evidence that the seatbelts locked when the brakes were applied? One individual, I believe, said that the seatbelts can lock when brakes are applied. So the hypothetical part is that there would be a collision. The locking of the seatbelt was at least supported by some evidence. The Bradley testimony and this other testimony that you just mentioned. Well, they're both hypothetical, but I think the seatbelt issue is also hypothetical. Just because they can lock when the brakes are applied doesn't mean someone... He's in a truck alone. He doesn't have to hit the brakes first. He can just immediately release the seatbelt. And there wasn't... He's the one driving. The example where we heard there was an issue with the seatbelt, someone else was driving. And so... Maybe the jury thought, well, a person instinctively would put on the brakes if a train were barreling toward them and the seatbelt then locks. That's hazardous. Well, I suppose they could have thought that, but I don't think that alone is enough to show that wearing a seatbelt is a hazardous safety condition. The other problem is this seatbelt rule doesn't just apply when you're facing an imminent collision. The seatbelt rule applies all the time. And so if the protected activity is raising a concern about a seatbelt rule, you have to look at the rule overall to decide if that's a reasonable objection, not just in one situation I can come up with there might be a problem. Did you put in any countervailing testimony showing the absolute necessity for a seatbelt rule? We pointed to the injuries that can occur without a seatbelt. We had given... I'm sorry? You put evidence of other accidents. Oh, absolutely, absolutely. That's how this all started was there had been two accidents where the individuals had run into the back of the train and they were not wearing seatbelts, and one was killed and one was seriously injured. And that's why they were reinforcing this rule. It had been on the books for a while. But if this employee is protected in making this report, nothing about that would require the railroad to change the seatbelt rule, would it? The railroad would just have to say, okay, we've heard your report. We disagree. We're sticking with our seatbelt rule, and the only consequence is you can't retaliate against him or do anything to him for reporting it. Well, I think it's going to be a very short leap between individuals making reports like that, and Mr. Anderson testified that it's a common response when someone's called out on a safety violation to raise an issue about that. It's a very short leap between that and employees saying, well, you disciplined me and you say it was for not following the rule, but I say it was because I raised that safety concern, and so a jury's going to have to decide every one of these cases. And what you're going to end up with is the railroad is going to become less safe because individuals can set their own safety rules by saying, I object to that safety rule. It's not reasonable. And then when they're not following that rule, they raise that objection again, and then they're disciplined, and they say, well, now I can bring a case because I say it was because I raised the concern. You say it was because I wasn't following the rule. We'll have to let a jury decide which one it is. So interpreting this as a protected activity presents a policy problem. But let me jump back to another problem with it as well. Why would that be such a big problem? I mean, if the person was refusing to follow the rule, you think juries might still say the motivation of the company was something other than insubordination? Well, it's having to go through the process of taking every case like that to trial when you've got 40,000 employees out there who feel like they can. The cost of it, yeah. Well, the cost of doing it, but also whether it imposes a negative incentive on not taking cases to trial when those situations come up, which means employees get away with setting their own rules over and over and the railroads become less safe. It could be a policy problem. I guess it could be a problem with what Congress did as opposed to anything we can address. If you find that that's protected. But you shouldn't find that that's protected because, first off, the language says not good faith belief but in good faith. And so I'm going to come back to that point. What's the definition of good faith? It was a good motive, honesty in motive. Now, a lot of definitions you will see will refer to belief, but those are talking about statutes that say good faith belief. So they're referring to honesty such as in honesty of belief. But the words good faith alone do not include belief. Now, if they do include belief, we say the judge was right in incorporating a reasonableness standard. Should we follow the Frank Easter book rule, a kind heart but an empty head is not enough? Well, essentially, yes. That's what we're asking for is that you apply the… In other words, he said what Lange actually believed is irrelevant for people who believe the most fantastic things in perfect good faith. Well, that's right. I mean, the thousands of people think the earth is flat, and that would be an honestly held belief, but it shouldn't satisfy this statute under these circumstances. Now, what I was saying at the very beginning is you could decide you're not going to reach the objective question by just saying that, as I think you addressed this, Judge Colleton, in your glibly concurring and dissenting opinion in the Title VII case, this statute could be read to require an actual hazardous safety condition, and the evidence put on here in no way could show an actual hazardous safety condition for the entirety of the seatbelt rule, because overall that seatbelt rule is absolutely safe, and you can't say it's unsafe just because you can come up with one scenario where if this happened and if I couldn't take my seatbelt off, even though that's never happened, I would be injured. You know, that doesn't make the rule unsafe. So with that, my time is up. Very well. Thank you. Thank you for your argument. Ms. Stull, we'll hear from you in rebuttal. This is not a situation where Mr. Monahan was trying to set his own rules. There is ample evidence, and actually uncontradicted evidence, that he held an honest, good-faith belief that wearing a seatbelt while high-railing was a hazardous safety condition. He raised his concern in the safety briefing the day before he was caught without his seatbelt on in the context of a discussion about whether or not this was a good idea to be enforcing the seatbelt rule. So clearly that was not a situation where he was trying to be defensive and get himself out of trouble. And the day that he was actually confronted by his supervisors on the track he had had his seatbelt on earlier in the day, had simply forgotten to put it back on after he'd been in and out of his high rail that day doing slow orders. When you're not in the habit of wearing a seatbelt, it's kind of hard to remember to put it back on. He was very respectful when he spoke with Mr. Anderson that day. He did what he was asked to do, just wanted to express his concern about the BNSF's newfound rule to enforce the seatbelt rule because of those honestly held concerns that he had about high railing. So even under an objective standard, if we wanted to apply that, the evidence that was presented at trial in the scenario of high railing when you might come across a train or other vehicle out of its limits is a hazardous safety condition. But even if it isn't, the law of the case and the fact that the jury instruction, the subjective component, was not objected to by the BNSF, so this whole argument is really for naught when the law of the case had been established that this was a subjective standard and the BNSF did not object to that portion of the jury instruction. Well, if this is affirmed, I mean, if we adopt your position, what effect does it have on the railroad's ability to enforce any safety rule? It has no effect. If Mr. Monahan could be... Well, he's got 40,000 employees, I guess. Maybe they have 40,000 different, quote-unquote, duly held beliefs. And that may very well be true, but the railroad is not allowed to retaliate against somebody simply for reporting a hazardous safety condition. We have no qualms with the fact the BNSF can enforce their safety rules. And the day that Mr. Monahan did get caught... They couldn't enforce it against him. Oh, no, they could enforce it against him. What had been originally said by Mr. Anderson when he confronted Mr. Monahan is that this is an ops test failure, an operations test failure. It's basically, hey, we caught you doing something wrong. It's a mark on your record. It's more of a training sort of disciplinary discussion. So he was supposed to get an ops test failure. In the old days, they called those brownies. I mean, this goes back to the turn of the 19th century. And now they have some new terms for it. Everybody talked about ops test failures at trials. So, I mean, that gets in... Then they would call them gigs if you didn't have your shirts buttoned. Well, anyway. Yeah, so, I mean, and those are examples of... There are lots of rules. There's a big rule book. And so... The overriding thing, there are countervailing interests, which is the employee's safety on the railroad. Yes, and we... Employees pick and choose the rules they want to follow. No, the employees... Okay, so finally, why did this guy get discharged? Not guy. Why did your client get discharged? Why was he discharged? Was it his obstinance? No, and that gets into all of the causation arguments that we didn't even brief, but... I withdraw my question. Okay. With that, Your Honors, I would ask that you reinstate the jury's verdict and reinstate Mr. Monahan to his position as a track inspector. Thank you. Very well. Thank you for your argument. Thanks to both counsel. The case is submitted and the court will file an opinion in due course. Counsel are excused.